1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   WAYMON MICKIANGELO                    No. CIV S-06-0343-FCD-CMK-P
     BERRY, III,
12
                    Plaintiff,
13
            vs.                           FINDINGS AND RECOMMENDATIONS
14
     JEFFREY L. BAKER, et al.,
15
                    Defendants.
16
     _____/
17
18          Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant
19   to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment
20   (Doc. 23).
21
22                        **I.  BACKGROUND**
23          Plaintiff names Jeffery Baker, Russell Robinson, and Roseanne Campbell as
24   defendants.  In his verified complaint, plaintiff claims that defendants engaged in a conspiracy to
25   falsify documents for the purpose of violating his civil rights.  In particular, plaintiff alleges that
26   defendants charged plaintiff with a rules violation based on the false information that plaintiff

                                    1

had threatened defendant Baker and that plaintiff had knowledge regarding defendant Baker's family.  Plaintiff claims that this rules violation charge was brought in retaliation for plaintiff having filed a grievance against correctional officers, including defendant Baker.

According to defendants, the following facts are not disputed:

1. During a portion of his childhood, plaintiff lived in Stockton, California;

2. Defendant Baker was raised in Stockton;

3. Plaintiff relayed facts to defendant Baker over a period of time which indicated that plaintiff had knowledge of Stockton during the 1970s, including knowledge of the neighborhood where defendant Baker had lived;

4. Defendant Baker never informed plaintiff that he had a grandmother living in Stockton;

5. On September 16, 2004, plaintiff filed an inmate grievance against several correctional officers, including defendant Baker;

6. On September 28, 2004, plaintiff and defendant Baker had a conversation in which plaintiff stated that he knew defendant Baker had a grandmother living in Stockton;

7. Defendant Baker has been working since 2000 to prevent drug trafficking at Mule Creek State Prison;

8. On September 30, 2004, defendant Baker prepared a memorandum requesting that plaintiff be transferred to another prison because defendant Baker believed that plaintiff posed a risk to him and his family living in Stockton;

9. On October 7, 2004, plaintiff and defendant Baker had a verbal altercation in which plaintiff stated:  "Hey Baker, you flipping me off?" and "You couldn't whip my ass when we were kids in the hood, I don't think you can now."

10. That same day, defendant Baker prepared a rules violation report against plaintiff based on his belief that plaintiff had threatened him;

11. Later on October 7, 2004, plaintiff was placed in administrative segregation;

12. Defendant Robinson affirmed plaintiff's placement in administrative segregation because he believed that the possibility that plaintiff would disseminate information concerning Baker's family in Stockton to the general population presented a risk to institutional security;

13.   On October 14, 2004, plaintiff appeared before the Institution
      Classification Committee ("ICC"), chaired by defendant Campbell,  for a
      review of his placement in administrative segregation;

14.   The ICC concluded that plaintiff's statements did not constitute an actual
      threat against defendant Baker;

15.   The ICC ordered the charge against plaintiff amended to reflect "over-
      familiarity," which is considered behavior that could lead to violence or
      disorder, instead of a threat against a correctional officer;

16.   The ICC ordered plaintiff's transfer to another prison based on concerns
      for institutional security;

17.   Plaintiff was transferred to Salinas Valley State Prison on November 23,
      2004.

Plaintiff asserts in his separate statement of disputed facts that, contrary to

defendants' contention, defendant Baker informed him that his grandmother lived in Stockton.

Specifically, plaintiff states that, in July 2002, while defendant Baker was covering the morning

breakfast movement at Mule Creek State Prison, he was "telling . . . stories about his younger

days in Stockton" and that, during the course of these stories, defendant Baker revealed that he

had lived with his grandmother in Stockton as a child.  According to plaintiff, defendant Baker

also revealed that he had attended Victory Elementary School – the same school plaintiff had

attended.  Attached to plaintiff's separate statement as Exhibit A is plaintiff declaration attesting

to the foregoing.


## II.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

3

1  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

2  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

3  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

4  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

5  after adequate time for discovery and upon motion, against a party who fails to make a showing

6  sufficient to establish the existence of an element essential to that party's case, and on which that

7  party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning

8  an essential element of the nonmoving party's case necessarily renders all other facts

9  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

10 whatever is before the district court demonstrates that the standard for entry of summary

11 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

12        If the moving party meets its initial responsibility, the burden then shifts to the

13 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15 establish the existence of this factual dispute, the opposing party may not rely upon the

16 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17 form of affidavits, and/or admissible discovery material, in support of its contention that the

18 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

19 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20 of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

21 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and

22 that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

23 for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

24        In the endeavor to establish the existence of a factual dispute, the opposing party

25 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

26 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

1    versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

2    judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

3    genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

4    committee's note on 1963 amendments).

5           In resolving the summary judgment motion, the court examines the pleadings,

6    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7    any.  <u>See</u> Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u>

8    <u>Anderson</u>, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

9    before the court must be drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.

10   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

11   produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen</u>

12   <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.

13   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

14   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

15   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

16   'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

17

18                                    **III.  DISCUSSION**

19          Defendants argue in their motion for summary judgment that, because plaintiff

20   cannot establish necessary elements of his retaliation claim, both the retaliation claim and the

21   claim of conspiracy to retaliate must necessarily fail.  As to the elements of plaintiff's retaliation

22   claim, defendants argue that plaintiff cannot establish either that there was any chilling effect on

23   his First Amendment rights, or that defendants' conduct failed to serve a legitimate penological

24   interest.  Defendants also argue that they are entitled to qualified immunity.

25   / / /

26   / / /

1          Prisoners retain a First Amendment right to petition the government through the

2 prison grievance process.  See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  In order to

3 prevail on a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was

4 retaliated against for exercising a constitutional right, and that the retaliatory action was not

5 related to a legitimate penological purpose, such as preserving institutional security.  See Barnett

6 v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the

7 prisoner must submit evidence establishing a specific link between the alleged retaliation and the

8 exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995);

9 Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also

10 establish that his constitutional right was actually chilled by the alleged retaliatory conduct.  See

11 Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).  Thus, the prisoner plaintiff must establish

12 the following in order to prevail on a claim of retaliation:  (1) prison officials took adverse action

13 against the inmate; (2) the adverse action was taken because the inmate engaged in protected

14 conduct; (3) the adverse action actually chilled the inmate's First Amendment rights; and (4) the

15 adverse action did not serve a legitimate penological purpose.  See Rhodes v. Robinson, 408 F.3d

16 559, 568 (9th Cir. 2005).  It is the prisoner's burden to establish that there were no legitimate

17 penological purposes motivating the actions of which he complains.  See Pratt, 65 F.3d at 808.

18 Finally, retaliation claims are evaluated in light of the deference generally accorded prison

19 officials.  See id. at 807.

20          It is undisputed in this case that defendants took adverse action against plaintiff.

21 The parties agree that plaintiff was charged with a rules violation and placed in administrative

22 segregation following a finding that he engaged in behavior that could lead to violence or

23 disorder.  As to the next element – whether the adverse action was taken because plaintiff

24 engaged in protected activity – it is also undisputed that, prior to adverse action being taken

25 against plaintiff, plaintiff had filed an inmate grievance.  While defendants do not raise a specific

26 argument addressing this element in their motion, defendants have submitted their declarations in

1   which they state that the adverse action was taken due to concerns for institutional safety and

2   security, and not because plaintiff filed an inmate grievance.  Other than the conclusory

3   statements in the verified complaint, plaintiff does not point to any evidence to contradict

4   defendants' declarations in this regard.

5           With respect to whether defendants' conduct served a legitimate penological

6   interest, defendants argue that plaintiff was found guilty of behaving in a manner that could lead

7   to violence or disorder and, therefore, the valid penological interests of institutional safety and

8   order motivated their conduct.  Again, defendants offer their declarations in support of this

9   contention and plaintiff has offered no evidence to suggest some other motivation.

10          Plaintiff attempts to create a dispute of fact by arguing that, contrary to defendant

11  Baker's assertion that he never told plaintiff that he had a grandmother living in Stockton,

12  defendant Baker actually volunteered this information two years prior to the events outlined in

13  the complaint.  Specifically, plaintiff states that defendant Baker's childhood residence in

14  Stockton came up in a July 2002 conversation and that, during this conversation, defendant

15  Baker disclosed that he and plaintiff had attended the same elementary school and that defendant

16  Baker had lived with his grandmother in Stockton.  According to plaintiff, defendant Baker lied

17  when he stated in the rules violation report that he never informed plaintiff that he had a

18  grandmother living in Stockton and that this "lie" is evidence that defendant Baker was

19  motivated by something other than legitimate penological interests.

20          The court, however, finds that the distinction is immaterial.  Regardless of

21  whether Baker told plaintiff in 2002 that his grandmother lived in Stockton or not, it is

22  undisputed that plaintiff, in fact, knew that defendant Baker's grandmother lived in Stockton.

23  This fact, coupled with the undisputed fact that Baker had been working to stem drug trafficking

24  in the prison since 2000, yields the legitimate concern for institutional safety.  In particular, and

25  as defendants suggest, if this information had been made general knowledge among the inmate

26  population, defendant Baker could have been at risk.  In addition, defendant Baker's grandmother

1    could have been subject to risk, raising the specter that defendant Baker could have been coerced

2    to protect his grandmother's safety.  Thus, even accepting plaintiff's version of events – that

3    defendant Baker told plaintiff in 2002 that his grandmother lived in Stockton – the undisputed

4    evidence establishes that defendants' actions were motivated by legitimate concerns for

5    institutional security and order.  Therefore, there simply is no dispute as to any material fact.

6            Next, defendants argue that plaintiff's exercise of a First Amendment right was

7    actually chilled by their conduct.  Again, based on the allegations in the complaint alone, this is

8    not disputed.  Specifically, plaintiff does not allege that, as a result of defendants' conduct, he

9    was prevented from engaging in conduct protected by the First Amendment.  To the contrary,

10   defendants have presented evidence that, following his transfer, he continued to file inmate

11   grievances.  This does not suggest that plaintiff was chilled from exercising his First Amendment

12   rights in any way by defendants' actions.

13           Finally, defendants argue that they are entitled to qualified immunity.  Because, as

14   discussed above, the court finds that plaintiff cannot establish necessary elements of his

15   retaliation claim, there was no constitutional violation in this case.  Therefore, defendants are

16   entitled to qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).

17

18                                    **IV.  CONCLUSION**

19           Based on the foregoing, the undersigned recommends that:

20           1.      Defendants' motion for summary judgment be granted;

21           2.      The Clerk of the Court be directed to enter judgment against plaintiff and

22   for defendants, and to close this file.

23           These findings and recommendations are submitted to the United States District

24   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

25   after being served with these findings and recommendations, any party may file written

26   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

                                            8

1   Findings and Recommendations."  Failure to file objections within the specified time may waive

2   the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3

4   DATED:   September 6, 2007.

5

6                                                    CRAIG M. KELLISON
7                                                    UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26